IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA

RAMAKANT SINGH, individually and
Derivatively on Behalf of Nominal Defendant
UNIVERSAL SYSTEM TECHNOLOGIES,
INC., a Florida Corporation,

   Plaintiff,

vs.             Case No.: 13-CA-2593-16-K

SANJAY PRASAD and UNIVERSAL
SYSTEM TECHNOLOGIES, INC., a Florida
Corporation,

   Defendants,

And

UNIVERSAL SYSTEM TECHNOLOGIES,
INC., a Florida Corporation,

   Nominal Defendant.

_____/

## VERIFIED COMPLAINT

Plaintiff, Ramakant Singh individually, and derivatively on behalf of Nominal Defendant Universal System Technologies, Inc., through his undersigned counsel, hereby brings this action against Defendants Sanjay Prasad ("Prasad") and Universal System Technologies, Inc. ("UST").

### INTRODUCTORY ALLEGATIONS

1. In this action, Ramakant Singh ("Singh") seeks relief individually and also derivatively asserts claims on behalf of Nominal Defendant UST as more particularly described herein.

27206825.1                1

2. UST is a corporation organized and existing under the laws of the State of Florida. UST's principal office is located in Lake Mary, Seminole County Florida.

3. Singh is a resident of Seminole County, Florida.

4. Upon information and belief, Prasad resides in Michigan.

5. This Court possesses personal jurisdiction over Prasad because during the time some of the facts alleged in this Complaint took place, he was a resident of Florida as evidenced by his possession of a Florida driver's license. Moreover, as alleged herein, Prasad has committed tortious acts in the State of Florida, has breached contracts in the State of Florida by failing to perform acts required by the contract to be performed in the State of Florida and has also engaged in substantial and not isolated activity within the State of Florida.

6. This Court has subject matter jurisdiction because the matters in controversy exceed $15,000 exclusive of interest, costs and attorneys' fees. Moreover, Fla. Stat. §607.1430 provides that the jurisdiction to dissolve a corporation, which is among the relief sought in this Complaint, resides in the circuit court.

7. Venue before this Court is proper because UST maintains its principal place of business in Seminole County, Florida. Moreover, Fla. Stat. § 607.1431(1) provides that venue for a proceeding brought under Fla. Stat. § 607.1430, which is among the relief sought in this Complaint, lies in the circuit court of the county where the corporation's principal office is or was last located, as shown by the records of the Department of State. Attached hereto as Exhibit "A" is a true and correct copy of a document obtained from the website maintained by the Florida Department of State showing UST's principal office is located in Lake Mary, Seminole County Florida. Attached hereto as Exhibit "B" is a true and correct

copy of UST's 2013 annual report filed with the Florida Department of State showing UST's principal office is located in Lake Mary, Seminole County Florida.

8. All conditions precedent to the maintenance of this action have occurred, been satisfied or have been waived.

9. Plaintiff had retained the undersigned attorneys to represent him in this matter and has obligated himself to pay said law firm a reasonable fee for its services.

## BACKGROUND

10. UST is an information technology consulting company that provides software, software services and technology solutions to its customers.

11. Prasad created UST in May 1993. At UST's inception, Prasad was UST's sole shareholder, director and officer. In 1993, UST had no revenue and during the entire year of 1994 only generated less than $13,000 in revenue.

12. At the time Prasad created UST, Singh had been a very successful information technology consultant. Prasad both recognized Singh's expertise in the information technology consulting business and UST's own inability to generate any meaningful revenue. Accordingly, in late 1994, Prasad approached Singh about joining UST.

13. Singh joined UST on January 1, 1995 and immediately started generating substantial revenue for UST which Prasad had been unable to generate. Singh was almost immediately appointed to its board of directors after he joined UST on January 1, 1995. From 1995 through the present, Prasad and Singh have each continually been directors of UST and have continually been the only directors of UST.

14. From UST's inception through April 30, 2004 Prasad was UST's President and Secretary. From at least 1994 through April 30, 2004 Singh was UST's Vice-President and

Treasurer. From May 1, 2004 through the present, Prasad has been UST's Chief Executive Officer and Secretary while Singh has been UST's President and Treasurer.

15. UST has, in effect, divided leadership because Singh is President and Prasad is Chief Executive Officer. Moreover, UST is deadlocked because it only has two directors who disagree on essentially all material matters relating to UST and its governance.

16. UST's Articles of Incorporation authorized a maximum of two thousand shares of UST's stock to be outstanding at any one time. At the time Singh joined UST, Prasad was the sole shareholder of UST and owned 500 shares of UST stock. Prasad's 500 shares of stock were issued July 30, 1993. Prior to Singh joining UST, Prasad promised and represented to Singh that the two of them would each always own 50% of UST. Thus, after Singh joined UST, he purchased 500 shares of UST stock, which were ultimately issued on January 1, 1995. As a result, beginning no later than January 1, 1995 Singh and Prasad each owned an identical percentage of UST's stock.

17. In 1998 Prasad told Singh that it would benefit UST for UST to be certified as a minority business by the National Minority Supplier Development Council, Inc. ("NMSDC"). Prasad further represented to Singh that in order for UST to be able to apply for this minority business certification, it was necessary for Prasad to own fifty-one percent of the shares of UST. Prasad further represented that, in order for Prasad to own fifty-one percent of the shares of UST, it would be necessary for UST to issue 520 of its remaining one thousand authorized shares to Prasad and 480 of its remaining authorized shares to Singh. Prasad further agreed with, represented to, Singh that upon UST receiving the minority certification from NMSDC, the shares of UST stock would be adjusted such that Prasad and Singh would each own the same number of shares of UST stock, and thereby revert to their

historical 50/50 ownership of UST and that UST would issue the required shares to Singh in Florida. Based on Prasad's agreements and representations, Singh, in his capacity as a member of UST's board of directors signed minutes of the annual meeting of UST's board of directors on December 11, 1998 ("1998 Board Meeting") to issue Prasad 520 of UST stock and himself 480 shares which shares were purportedly issued on January 1, 1999. The minutes were prepared by Prasad. In actuality, despite what is started in the minutes of the 1998 Board Meeting, no meeting took place and Prasad and Singh simply signed the minutes as if a meeting had taken place. At the time Singh signed the minutes of the 1998 Board Meeting, he did so in reliance on the agreements and representations set forth in paragraph 16 above and this paragraph including that the shares would be adjusted at a future date. Pursuant to the facts alleged in this paragraph UST and Singh entered into a contract ("Contract"), the terms of which are stated in this paragraph.

18. From before the 1998 Board Meeting through December 2012, Prasad consistently and repeatedly promised that the UST shares would be adjusted such that Prasad and Singh would each own fifty percent of UST. After UST obtained the minority certification from NMSDC, Singh periodically inquired of Prasad when the shares of UST would be adjusted so that each would own the same number of shares. Prasad continually represented to Singh that in order to so adjust the shares, it would be necessary for UST's Articles of Incorporation to be amended to provide for an increase in the authorized shares which, new authorized shares, would be issued to Singh so that the ultimate number of shares owned by Prasad and Singh would be equal but continually made excuses when the Articles of Incorporation had not been amended.

19. In December 2012, Singh demanded again that UST's Articles of Incorporation be amended to provide for the issuance of additional shares so that ownership of UST could revert to the original 50% ownership for Prasad and Singh. At that time, and for the first time, Prasad refused to agree to amend the Articles of Incorporation and claimed there was never an agreement to adjust the shares.

20. The 520 shares of UST stock purportedly issued to Prasad on January 1, 1999 were not properly issued because, though the shares state that they were being issued in return for a cash payment from Prasad and Prasad never paid for the shares of stock. Accordingly, the 520 shares of stock have not been validly issued.

21. Utilizing his positions as President or Chief Executive Officer of UST, Prasad has been misapplying and/or wasting the corporate assets of UST to UST's material injury by a variety of actions including, without limitation, those described below.

22. As explained in more detail below, Prasad, who is a native of India, has improperly diverted UST funds to his personal business ventures, relative and friends in India. Prasad desired to pursue various personal business activities in India. Indeed, since 1995, while Singh has been building UST's business on a more than full time basis, Prasad has devoted the majority of his time to his personal pursuits as a full time consultant at the City of Detroit (which has not generated any revenue for UST – only Prasad) and on Prasad's personal business ventures in India. Initially, he funded these money losing ventures with his personal funds. However, in, 2002 Prasad, utilizing his position as President of UST, registered UST with the country of India for the purpose of using UST's monies to fund his personal business ventures when he could not sustain those ventures himself. In doing so, Prasad both diverted UST's funds to or on behalf of himself, his family members and friends

as explained in more detail below, and subjected UST to Indian law which has caused UST substantial damages. For example, India has assessed service tax liabilities on UST for Prasad's ventures in India because, while Prasad's ventures had nothing to do with UST's business, Prasad conducted those ventures through UST, UST collected service tax from Prasad's customers in India and did not remit those taxes to the appropriate Indian taxing authority. As a result, UST has received many notices from various agencies within the Indian government notifying it of purported violations of Indian tax law and other government rules and regulations governing companies doing business in India. Prasad conducted his business ventures through UST even though those ventures had nothing to do with UST business, were not authorized by UST's board of directors and Singh, individually, and on behalf of Derivative Defendant UST, repeatedly objected to Prasad's actions.

23. In addition to improperly subjecting UST to tax and other liability in India, Prasad, also utilizing his position as Chief Executive Officer of UST, also wrongly transferred UST's assets to his family members and friends who live in India. For example, after improperly registering UST in India, Prasad has hired his father-in-law and cousin, both of whom are residents of India, to serve as paid "Officers" of UST in India for which UST received little or no value. Prasad has unilaterally directed hundreds of thousands of UST's dollars to UST's purported operations in India even though no UST documents exist showing the work, of the value of the work, purportedly to be done in India. Moreover, UST has received little or no value for its funds. Prasad's actions were not authorized by UST's board of directors and Singh individually, and on behalf of Derivative Defendant UST, repeatedly objected to Prasad's actions.

24. After Singh objected to Prasad's actions described in paragraphs 22-23 above, Prasad created UST Software India Pvt. Ltd. ("UST Ltd") in March 2003 ostensibly to provide services to Prasad's customers in India and to allow UST to revoke its registration in India so that it was no longer registered to do business in India. To date, however, Prasad has blocked and/or not taken the steps necessary to revoke UST's registration in India. Utilizing his position as Chief Executive Officer of UST, Prasad has misused UST's assets by directing UST's United States based employees to assist UST Ltd's employees in providing services to the customers of UST Ltd with no compensation to UST for the use of its assets. Prasad also misused UST's assets by, among other things, allowing UST Ltd employees to use UST's domain name implying that they were associated with UST and training UST Ltd employees and third parties on UST's computer systems with no compensation to UST. Indeed, Prasad issued false training and experience certificates to certain of these UST Ltd employees and third parties representing that they had completed certain training which was not completed and they had been working for UST while they were never employed by UST. Moreover, utilizing his position as Chief Executive Officer of UST, Prasad has also unilaterally directed hundreds of thousands of UST's dollars to UST Ltd supposedly to run operations of UST Ltd with no such arrangement between the two companies The amounts paid by UST to UST Ltd were exorbitant and UST has received little or no value for its funds. To the contrary, Prasad's actions principally, if not completely, benefitted Prasad, his family members and his father-in-law, who own UST Ltd. After Singh objected to these wrongful acts, Prasad told Singh that UST would be made whole because, according to Prasad, UST would own at least 99% of UST Ltd because Prasad and his family members would transfer their ownership interests in UST Ltd to UST.

Singh has objected to any such transfer because he does not believe it would reimburse UST for the monies improperly diverted to UST Ltd. Prasad's actions were not authorized by UST's board of directors and Singh individually, and on behalf of Derivative Defendant UST, repeatedly objected to Prasad's actions.

25. In addition to transferring UST's money to his family members and friend in India through the transfers to UST Ltd discussed above, utilizing his positions as President or Chief Executive Officer of UST, Prasad hired his father-in-law, a resident of India and one of Prasad's cousins to serve as "advisors" to UST in the United States. These individuals do not provide any meaningful value to UST and UST has received little or no value from them. Rather, this is an improper way for Prasad to funnel UST's money to his relatives. Prasad's actions were not authorized by UST's board of directors and Singh individually, and on behalf of Derivative Defendant UST, repeatedly objected to Prasad's actions.

26. Prasad manages UST's relationship with one of its customers Angstrom Holdings, LLC ("Angstrom") while Singh has been responsible for delivery of the project to the customer. UST agreed to provide certain services to Angstrom ("Angstrom Contract"). The Angstrom Contract required resources from both UST and Angstrom to complete the Angstrom Contract. Angstrom did not provide the resources it committed to provide despite repeated requests; which resulted in a massive delay on the project. The work on the Angstrom Contract has also exceeded that initially contemplated by the parties. Yet, Prasad refused to request additional compensation from the customer. Moreover, Angstrom is substantially late in making payments due UST and despite demand from Singh, Prasad has refused to demand payment from the customer.

27. Utilizing his positions as President or Chief Executive Officer of UST, Prasad has employed a number of his family members and friends as employees of, or consultants to, UST and UST has received little or no value for their services. For example, several of the individuals employed by Prasad do not have the subject matter expertise to provide services to UST and some of them had no relevant experience in information technology at all. Moreover, as a whole, UST has lost money on family members and friends which Prasad has hired as employees of and consultants to UST. Moreover, for some or all of the time these family members and friends of Prasad have received compensation from UST, they were not parties to any employment agreement with UST and did not submit periodic activity sheets or invoices or they were paid by UST while working for UST Ltd; all in violation of UST's policies. UST has incurred a loss on several of these family members of Prasad because UST has paid them 100% of the amounts they billed to customers such that none of the revenue attributed to them was available to pay any of UST's costs. Moreover, UST has borne costs associated with these family members of Prasad including costs for immigration, legal expenses and paying for their benefits such as medical insurance. Prasad's actions were not authorized by UST's board of directors and Singh individually, and on behalf of Derivative Defendant UST, repeatedly objected to Prasad's actions.

28. In addition to the family members and friends referred to in paragraph 27 above, Prasad created a corporation named Z-logic, Inc ("Z-logic") which has provided services to UST. Upon information and belief, Prasad owns Z-logic. For some or all of the time Z-logic received compensation from UST, there was no agreement between Z-logic and UST and Z-logic did not submit invoices to UST but simply received whatever monies Prasad desired to transfer to Z-logic; all in violation of UST's policies. Prasad's actions were not authorized

by UST's board of directors and Singh individually, and on behalf of Derivative Defendant UST, repeatedly objected to Prasad's actions.

29. Prasad is employed both as a salaried officer of UST and as an independent contractor to UST and receives both a IRS form W-2 an IRS form 1099 annually until 2010. However, Prasad does not invoice UST for his services. Rather, using his position as Chief Executive Officer of UST, Prasad simply pays himself, by withdrawing money from UST accounts, whatever he desires. Prasad's actions were not authorized by UST's board of directors and Singh individually, and on behalf of Derivative Defendant UST, repeatedly objected to Prasad's actions.

30. In December 2012, Prasad advised Singh that he desired to "split" UST effective January 1, 2013 between Singh and himself. Singh understood that Prasad desired to purchase Singh's interest in UST. Thereafter, Prasad hired one of his personal friends, Pranay Sahay ("Sahay"), as a supposed employee of UST. Prasad grossly overpaid Sahay paying him more than twice what he was making at his prior employment. In reality, Prasad hired Sahay to assist Prasad in paying less for Singh's stock in UST that was otherwise

31. The above actions have caused and are continuing to cause, material injury to UST.

## COUNT I

32. This is an action for judicial dissolution of UST pursuant to Fla. Stat. §607.1430(3)(a) because UST's assets are being misapplied and/or wasted causing material injury to UST.

33. Plaintiff realleges the allegations contained in paragraphs 1-3 and 6-31 above.

34. Singh is a shareholder of UST, which only has two shareholders.

35. Prasad's actions detailed in paragraphs 21 through 30 above constitute the misapplication and/or waste of UST's assets which has caused, and continues to cause, UST material injury.

WHEREFORE, Singh requests the Court dissolve UST, award Singh his attorneys' fees to the extent they are appropriate under Fla. Stat. §607.1430 (4), award Singh the costs of this action and grant him such other and further relief as the Court deems proper.

## COUNT II

36. This is an action against UST for specific performance of contract.

37. Singh realleges the allegations contained in paragraphs 1-3 and 6-19 above.

38. UST has breached the Contract with Singh by failing to authorize the issuance of additional shares and issue additional shares such that the ownership of UST between Prasad and Singh would be equal.

39. Singh has been damaged by UST's breach of the Contract and requests the Court to use its equitable powers to direct UST to authorized additional shares and issue them such that Prasad and Singh each own fifty percent of UST. In the alternative, Singh seeks money damages based upon UST's breach of contract.

40. Singh does not have an adequate remedy at law.

WHEREFORE, Singh requests the Court direct UST to authorize the issuance of additional shares of stock and issue them to Prasad and Singh such that the ultimate ownership by each individual is equal. In the alternative, Singh seeks money damages and interest. Singh also seeks the cost of this action and such other and further relief as the Court deems proper.

## COUNT III

41. This is an action against UST and Prasad for fraudulent inducement.

42. Singh realleges the allegations contained in paragraphs 1-19 above.

43. Singh has been damaged by Prasad's misrepresentations of fact upon which he justifiably relied to his detriment when he entered into the Contract.

44. At the time Prasad made the representations to Singh contained in paragraphs 17-18 above, he was acting within the course and scope of his employment with UST. Accordingly, UST is liable for Prasad's actions.

WHEREFORE, Singh seeks damages against UST and Prasad, interest, costs of this action and such other and further relief as the Court deems proper. Upon a proper showing, Singh will also seek punitive damages in accordance with Fla. Stat. §768.72(1).

## COUNT IV

45. This is an action to void issuance of shares of stock of UST and is brought in the alternative to the claims asserted in Count II.

46. Singh realleges the allegations contained in paragraphs 1 through 20 above.

47. On January 1, 1999, UST purported to issue to Prasad five hundred twenty shares of UST stock and four hundred eighty shares of UST stock to Singh. The corporate documents of UST reflect that Prasad was to pay $520 for his shares of stock and Singh $480. Neither Prasad nor Singh paid for these additional shares of stock and, accordingly, the Court should void the issuances of these shares.

48. Singh does not have an adequate remedy at law.

WHEREFORE, Singh requests the Court void the purported issuance of the shares of stock referred to in this Count, award Singh costs of this action and such other and further relief as the Court deems proper.

## COUNT V

49. This is an action for judicial dissolution of UST pursuant to Fla. Stat. §607.1430(2)(b).

50. Prasad and Singh are the only directors of UST and they are deadlocked with respect to all material decisions involving UST's business and corporate affairs.

51. Upon the Court granting the relief request in either Count II or Count IV above, Prasad and Singh will each own fifty percent of the shares of UST and, as a result, the shareholders of UST will be unable to break any deadlock of the board of directors.

WHEREFORE, Singh requests the Court resolve UST, award him his attorneys fees, costs of this action and such other and further relief as the Court deems proper.

## COUNT VI

52. This is a derivative action brought by Singh derivatively on behalf of UST against Prasad for breach of fiduciary duty.

53. Singh on behalf of UST realleges the allegations contained in paragraphs 1-31 above.

54. Prasad owed, and owes, UST certain fiduciary obligations. By reason of his fiduciary relationship, Prasad owed, and owes, UST the highest obligation of good faith, fair dealing, loyalty, and due care.

55. Prasad violated and breached his fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision. As a result of his actions alleged above, Prasad is subject to liability breaching his fiduciary duties to UST.

56. Prasad cannot be presumed to exercise independent judgment in accessing the merits of a demand that an action be brought against him, if one were made, due to his

personal and financial interests in the subject matter of the claims raised in this Complaint. Rather, Prasad would be required to bring claims against himself for his own misconduct and subject himself to liability, embarrassment and risk of adverse consequences from any such litigation.

57. The relevant board of directors for UST for purposes of a demand for suit consists of Prasad and Singh.

58. Singh did not bring a demand on the board of directors to bring this action on behalf of UST because such a demand would have been futile, wasteful and a useless act for the reasons set forth herein. Prasad faces and array of personal liabilities and conflicts of interest that prevent him from exercising disinterested business judgment regarding the allegations herein.

59. As a direct and proximate result of Prasad's failure to perform his fiduciary obligations, UST has sustained significant damages for which Prasad is liable to UST.

60. Singh, on behalf of UST has no adequate remedy at law.

WHEREFORE, Singh, on behalf of UST, requests the Court determine that his suit is a proper derivative action and certify Singh as the appropriate representative for UST for said action; declaring that Prasad has breached his fiduciary duties to UST; directing that Prasad account to UST for all damages sustained or to be sustained by UST as a result of Prasad's breaches of his fiduciary duties. Upon a proper showing, Singh will also seek punitive damages in accordance with Fla. Stat. §768.72(1).

## COUNT VII

61. This is a derivative action against Prasad for reckless and gross mismanagement.

62. Singh, on behalf of UST, realleges the allegations contained in paragraphs 1-31 above.

63. By his actions alleged in this Complaint, Prasad abandoned and abdicated his responsibilities and fiduciary duties with regard to prudently managing the assets and business of UST.

64. As a direct and proximate result of Prasad's gross and reckless mismanagement and breaches of duties alleged herein, UST has sustained significant damages for what Prasad is liable to UST.

65. Singh, on behalf of UST, has no adequate remedy at law.

WHEREFORE, Singh, on behalf of UST, requests the Court determine that his suit is a proper derivative action and certify Singh as the appropriate representative for UST for said action; declaring that Prasad has breached his fiduciary duties to UST and committed gross and reckless mismanagement of UST; directing that Prasad account to UST for all damages sustained or to be sustained by UST as a result of Prasad's conduct. Upon a proper showing, Singh will also seek punitive damages in accordance with Fla. Stat. §768.72(1).

DATED: June 25, 2013.                    Respectfully Submitted,

Daniel C. Johnson
Bar Number 522880
Carlton Fields, P.A.
P.O. Box 1171
Orlando, FL 32802-1171
Telephone:   407.849.0300
Facsimile:   407.648.9099
djohnson@carltonfields.com

## VERIFICATION OF COMPLAINT

STATE OF FLORIDA )
                 ) ss:
COUNTY OF ORANGE )

I, Ramakant Singh have read the Verified Complaint and know the contents thereof. The Complaint is true and correct. I declare under penalty of perjury that the foregoing is true and correct.

_____
Ramakant Singh


STATE OF FLORIDA )
                 ) ss:
COUNTY OF ORANGE )

Subscribed and sworn to before me on June 25, 2013, by Ramakant Singh, who is personally known to me or has produced  driver's license  as identification.

_____
Notary Public
Print Name: _____
My commission expires: _____

MARY R. TIEDEKEN
Notary Public - State of Florida
My Comm. Expires Jun 9, 2016
Commission # EE 197190
Bonded Through National Notary Assn.

27206825.1                                17

# FLORIDA DEPARTMENT OF STATE
# DIVISION OF CORPORATIONS

No Events  No Name History

Return to Search Results

Entity Name Search

[ Search ]

## Detail by Entity Name

### Florida Profit Corporation
UNIVERSAL SYSTEM TECHNOLOGIES, INC.

### Filing Information

| | |
|---|---|
| Document Number | P93000036770 |
| FEI/EIN Number | 593186646 |
| Date Filed | 05/18/1993 |
| State or Country | FL |
| Status | ACTIVE |

### Principal Address

1307 S. INTERNATIONAL PKWY
SUITE 1051
LAKE MARY, FL 32746

Changed: 04/27/2006

### Mailing Address

1307 S. INTERNATIONAL PKWY
SUITE 1051
LAKE MARY, FL 32746

Changed: 04/27/2006

### Registered Agent Name & Address

SINGH, RAMAKANT
3280 OAKMONTE TERRACE
LONGWOOD, FL 32779

Name Changed: 03/23/1995

Address Changed: 12/28/2000

### Officer/Director Detail

Name & Address

Title CEO

PRASAD, SANJAY
1515 CHARLEVOIS DR.
TROY, MI 48085

Title P

SINGH, RAMAKANT

EXHIBIT A

## 2013 FLORIDA PROFIT CORPORATION ANNUAL REPORT

DOCUMENT# P93000036770

Entity Name: UNIVERSAL SYSTEM TECHNOLOGIES, INC.

FILED
Mar 29, 2013
Secretary of State

**Current Principal Place of Business:**
1307 S. INTERNATIONAL PKWY
SUITE 1051
LAKE MARY, FL 32746

**Current Mailing Address:**
1307 S. INTERNATIONAL PKWY
SUITE 1051
LAKE MARY, FL 32746 US

FEI Number: 59-3186646

Certificate of Status Desired: Yes

**Name and Address of Current Registered Agent:**

SINGH, RAMAKANT
3280 OAKMONTE TERRACE
LONGWOOD, FL 32779 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

Electronic Signature of Registered Agent                Date

**Officer/Director Detail Detail :**

| Title | CEO | Title | P |
|---|---|---|---|
| Name | PRASAD, SANJAY | Name | SINGH, RAMAKANT |
| Address | 1515 CHARLEVOIS DR. | Address | 3280 OAKMONTE TERRACE |
| City-State-Zip: | TROY MI 48085 | City-State-Zip: | LONGWOOD FL 32779 |

I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.

SIGNATURE: RAMAKANT SINGH                    PRESIDENT                    03/29/2013

Electronic Signature of Signing Officer/Director Detail                Date

EXHIBIT B

Detail by Entity Name                                                                 Page 2 of 2

3280 OAKMONTE TERRACE
LONGWOOD, FL 32779

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 2011 | 02/18/2011 |
| 2012 | 03/21/2012 |
| 2013 | 03/29/2013 |

## Document Images

| Date | |
|---|---|
| 03/29/2013 -- ANNUAL REPORT | View image in PDF format |
| 03/21/2012 -- ANNUAL REPORT | View image in PDF format |
| 02/18/2011 -- ANNUAL REPORT | View image in PDF format |
| 02/08/2010 -- ANNUAL REPORT | View image in PDF format |
| 02/19/2009 -- ANNUAL REPORT | View image in PDF format |
| 02/27/2008 -- ANNUAL REPORT | View image in PDF format |
| 02/28/2007 -- ANNUAL REPORT | View image in PDF format |
| 04/27/2006 -- ANNUAL REPORT | View image in PDF format |
| 01/28/2005 -- ANNUAL REPORT | View image in PDF format |
| 05/03/2004 -- ANNUAL REPORT | View image in PDF format |
| 02/03/2003 -- ANNUAL REPORT | View image in PDF format |
| 02/20/2002 -- ANNUAL REPORT | View image in PDF format |
| 04/27/2001 -- ANNUAL REPORT | View image in PDF format |
| 12/28/2000 -- ANNUAL REPORT | View image in PDF format |
| 05/06/1999 -- ANNUAL REPORT | View image in PDF format |
| 05/12/1998 -- ANNUAL REPORT | View image in PDF format |
| 08/08/1997 -- ANNUAL REPORT | View image in PDF format |
| 05/01/1996 -- ANNUAL REPORT | View image in PDF format |
| 03/23/1995 -- ANNUAL REPORT | View image in PDF format |

No Events   No Name History

Return to Search Results

Entity Name Search
[ Search ]